Frederick L. Meagher v. Commissioner. Fred P. Meagher v. Commissioner.
Meagher v. Commissioner
Docket Nos. 33677, 33678.
United States Tax Court
1953 Tax Ct. Memo LEXIS 233; 12 T.C.M. (CCH) 609; T.C.M. (RIA) 53188; May 29, 1953
*233 Fred L. Rosenbloom, Esq., for the petitioners. Edward Pesin, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income taxes as follows: 1946
1947
Frederick L. Meagher
$4,696.18
$3,881.09
Fred P. Meagher
4,577.20
3,756.42
The petitioners claim an overpayment in each of the respective taxable years. The contested issues are (1) whether gains realized in the taxable years 1946 and 1947 from the sales of improved real estate are taxable as ordinary income or as long-term capital gains; and (2) whether gains realized in the taxable years 1946 and 1947 from the sales of unimproved real properties are taxable as ordinary income or as long-term capital gains. The stipulated facts are found accordingly. Findings of Fact Petitioners are individuals having their principal office in Upper Darby, Pennsylvania. Their income tax returns for the periods involved were filed with the collector of internal revenue for the first district of Pennsylvania. Petitioners are and since January 4, 1940, have been equal partners in a partnership trading as Meagher Construction *234 Company, hereinafter called the partnership, with offices in Upper Darby Township, Delaware County, Pennsylvania. The partnership was formed to engage in the general real estate business, buying and selling of real estate, building residences and other types of structures, and any business incident or appertaining thereto. Principally, the partnership engaged in building houses for customers and for speculation. During the year 1941 the partnership, using the trade name of Merion Builders, erected 37 dwelling houses on a tract of land situated in Ardmore, Pennsylvania. Of the 37 houses erected on this tract in 1941, 16 were sold in 1941 and 21 were sold in 1942. During the year 1942 the partnership erected 44 houses on an adjacent tract of land situated in Ardmore, Pennsylvania. These 44 houses, hereinafter sometimes referred to as Ardmore Homes, were built subject to regulations of the Federal Housing Administration (FHA), later the National Housing Agency (NHA), and pursuant to preference rating order No. P-55, granted by the Office of Production Management (OPM) under date of March 10, 1942. The tract of land upon which the Ardmore Homes were erected was acquired in 1941. *235 On March 31, 1942, and May 31, 1942, during the period of construction of the 44 homes, the partnership filed progress reports with the War Production Board (WPB), successor to OPM. Upon completion of the 44 dwelling houses erected in the Ardmore Homes project in 1942, 43 of them were rented. The forty-fourth house was conveyed to one of the job foremen. Following completion of the houses, a report of occupancy required by the regulations of FHA was filed with the Philadelphia district director of that agency on November 17, 1942. Each of the above-mentioned 43 rented properties in the Ardmore Homes project was rented for an initial term of one year, pursuant to two written leases, one covering the dewlling house at a stipulated rental of $50 per month and one covering the garage at a stipulated rental of $10 per month. The leases were identical in all respects. When the initial term of one year expired the leases provided that the tenancy was from month to month. The 43 rented houses in the Ardmore Homes project were registered by the partnership with the area rent director in Philadephia, Pennsylvania, on November 6, 1942. During the year 1943 the partnership applied, first *236 to the district director of FHA and subsequently to the Philadelphia area rent director, for a $5 per month increase in the maximum rent applicable to the 43 rented homes. On September 10, 1943, the area rent director issued an order fixing the maximum rent for the 43 homes at $55 per month, and throughout the period from that date to the end of 1947 the monthly rental was $55. From March 10, 1942, to October 15, 1945, the use, occupancy, and disposition of the rented houses in the Ardmore Homes project were subject to controls and restrictions imposed by regulations of OPM, WPB, and NHA, all of which regulations are incorporated herein by reference. Under these regulations, sales were permitted only to eligible war workers after a minimum period of occupancy of four months, later reduced to two months. On October 15, 1945, by order of WPB and NHA, all controls and restrictions other than rent controls upon such houses were terminated. During the years 1944 to 1947, inclusive, the partnership sold 25 of the 43 properties which had been erected in the Ardmore Homes project in 1942. The sales each year were as follows: 1944
9
1945
8
1946
3
1947
5 Nine of the *237 houses sold in 1944, four of the houses sold in 1945, and three of the houses sold in 1947 were sold on the installment basis and were so reported on the partnership returns for those years. The Ardmore Homes properties were advertised for sale on numerous occasions during the years 1946 and 1947 in Philadelphia, Pennsylvania, newspapers. A typical advertisement was that appearing in the Philadelphia Inquirer, of Sunday, July 14, 1946, as follows: "Ardmore 436 E. Spring Ave. Sample Open Today 1 to 5 P.M." "Modern Singles, 3 bedrooms, tile bath. Automatic gas heat. Garage. Pleasantly located in Lower Merion Township where you are favored by fine schools, stores, transportation and exceptionally low taxes. Price, $13,950. Visit sample today or consult Mr. Donahoo at Clearbrook 4100." Mr. Donahoo, referred to in the foregoing advertisment, was a licensed real estate broker, who had desk space in the office of the partnership but had no other connection with the petitioners. After the termination on October 15, 1945, of all Government controls other than rent controls, the partnership made efforts to sell the Ardmore Homes properties because the rentals were economically unsound. *238 The rentals of $55 per month were low in proportion to what the properties were worth on the market. Moreover, some of the houses were in need of repair and the petitioners were advised by the local Office of Price Administration that if they repaired one house they had to repair all of them. In addition real estate taxes had increased. The partnership never maintained a sales force. It sold some of the Ardmore Homes through brokers, paying them the required brokerage commission. During the taxable years in question there was a very active seller's market, and the petitioners received hundreds of calls from real estate brokers and other prospective purchasers who wanted to buy the Ardmore Homes. Prior to March 10, 1942, when the governmental restrictions went into effect, the partnership had not built any homes with the intention of renting them. If restrictions had not been imposed the partnership would have continued to build and sell, as it did prior to the war. During the taxable year 1946 the partnership realized profits from sales of houses in the Ardmore Homes project in the total amount of $20,981.06, of which $6,352.92 represented profits from installment sales made *239 in 1944, and $561.73 represented profits from installment sales made in 1945. During the taxable year 1947 the partnership realized profits from sales of houses in the Ardmore Homes project in the total amount of $25,212.62, of which $4,233.63 represented profits from installment sales made in 1944, $480.36 represented profits from installment sales made in 1945, and $5,741.93 represented profits from installment sales made in 1947. On July 26, 1939, petitioners and one Ben Carroll purchased for $10,156.64 a tract of vacant land containing approximately 8.3783 acres, located at Burmont Road and Township Line, Drexel Hill, Pennsylvania. Petitioners paid one-half of the purchase price, or $5,078.32, and acquired a one-half interest therein. Petitioners contributed their interest in this tract to the partnership upon its formation in 1940. On January 3, 1941, the partnership purchased Ben Carroll's one-half interest in this tract for $6,500. During the period from 1940 to September 11, 1947, the partnership expended $2,376.96 in carrying charges which were capitalized on the partnership books of account and added to the cost of the Burmont Road tract. On September 11, 1947, the *240 partnership sold the Burmont Road tract to the Reverend Joseph P. Duross, of Upper Darby Township, Delaware County, Pennsylvania, for the sum of $26,194. The partnership paid a brokerage commission and miscellaneous costs, aggregating $1,335.15, in connection with this sale. As a result of this sale, the partnership realized $10,903.57 in excess of its cost. On August 16, 1939, petitioner Fred P. Meagher and one Samuel N. Rhodes purchased a tract of land, known as the Winder tract, situated in Nether Providence Township, Delaware County, Pennsylvania, for a total consideration of $20,400.35, of which $10,000 was paid in the form of a purchase money mortgage. Petitioner Fred P. Meagher contributed one-half of the purchase price. Title of the property was taken in the name of Samuel N. Rhodes, and, simultaneously therewith, Rhodes executed and delivered to Meagher a deed of trust with respect to an undivided one-half interest in the property. On November 9, 1939, Samuel N. Rhodes, acting for himself and on behalf of petitioner Fred P. Meagher, sold a portion of the Winder tract for a net consideration of $17,551.75. Petitioner Fred P. Meagher contributed his undivided one-half *241 interest in the remaining portion of the Winder tract to the partnership upon its formation in 1940. On June 17, 1946, Samuel N. Rhodes, acting for himself and on behalf of the partnership, sold the remaining portion of the Winder tract for a net consideration of $11,488.10, of which the partnership received one-half, or $5,744.05. As a result of this sale, the partnership realized $5,139.31 in excess of its cost basis. The partnership would have consented to the sale of both the Burmont Road and the Winder tracts of unimproved real estate at any time if a reasonable offer had been received. Both parcels were held for expeditious resale. No rental income was ever received from such properties. The gains realized by the partnership from the sales of both improved and unimproved real estate in the taxable years 1946 and 1947 are taxable as ordinary income. Opinion LEMIRE, Judge: The question presented is whether the gain accruing to the Meagher Construction Company, a copartnership in which the petitioners were equal partners, from the sales in 1946 and 1947 of improved and unimproved real estate should be taxed as ordinary income or as income derived from the sale of capital *242 assets. The petitioners in their respective tax returns for the years in question reported the profits realized from the sales of certain real properties as ordinary income. The respondent determined deficiencies against each petitioner as a result of other adjustments. In their petitions the petitioners allege that they erroneously returned the profits from the sale of the real properties here in question as ordinary income and now contend that such profits are properly taxable as long-term capital gains pursuant to section 117 (j) of the Internal Revenue Code, and claim an overpayment of tax in each of the taxable years. Section 117 (j) of the Code, while giving preferential treatment to the gain realized from the sale or disposition of certain property, expressly excludes from its scope gain from the sale or disposition of property held primarily for sale to customers in the ordinary course of the trade or business carried on by the taxpayer. Whether the property sold or otherwise disposed of was held for sale to customers in the ordinary course of business, within the meaning of section 117 (j), is primarily a question of fact. Rubino v. Commissioner, 186 Fed. (2d) 304; *243 King v. Commissioner, 189 Fed. (2d) 122. Therefore, each case turns upon its own particular facts and circumstances. Among the factors applied in determining the question are the purposes for which the property was acquired, the activities of the taxpayer or others in his behalf, frequency and continuity of sales, and any other fact which tends to indicate whether the sale was in furtherance of the business carried on. Rollingwood Corp. v. Commissioner, 190 Fed. (2d) 263; C. E. Mauldin, 16 T.C. 698, affd. 195 Fed. (2d) 714. The petitioners, in 1940, formed a partnership for the purpose of engaging in the general real estate business, buying and selling of real estate, building residences and other types of structures, and any business incident or appertaining thereto. From 1940 until March 1942, the partnership primarily engaged in building custom homes under contract, and building residences for sale to any purchaser on land acquired by the partnership for such purposes. In 1941 the partnership constructed 37 houses which were sold during 1941 and 1942. With the advent of the war and the passage of FHA and OPM regulations *244 in March 1942, the partnership could not build houses without restricting them to rental or limited sales to eligible war workers. In order to preserve its business the partnership, pursuant to the governmental restrictions, obtained authorization to construct 44 houses. These houses, designated as the Ardmore Homes, were constructed on premises acquired in 1941 by the partnership for the purpose of erecting houses for sale. The first issue pertains to these 44 houses. The houses were to be rented under a lease for one year and thereafter on a month-to-month basis at a ceiling rental. The governmental restrictions were released on October 15, 1945. In 1944 the partnership sold nine of these houses and in 1945 they sold eight more. Three houses were sold in the taxable year 1946 and five houses were sold in the taxable year 1947. While the partnership had no sales force at any time, during the taxable years it advertised the Ardmore houses for sale and paid commissions to real estate brokers who procured acceptable customers. In 1946 and 1947 the real estate market was very active and petitioners received numerous calls from brokers and other prospective customers. The record further *245 establishes that some of the houses were in need of repair and that the rentals received were low in proportion to the market value of the houses and, with real estate taxes increasing, it was economically unsound to continue on a rental basis. In our opinion, the facts here clearly indicate that the rental of the Ardmore houses was an incidental activity pending the lifting of governmental controls. If the original intention of the partnership was to hold the Ardmore properties for rental purposes, the continuity and frequency of the sales, both prior and subsequent to the lifting of the controls, convince us that during the taxable years in question they were no longer held for rental, but primarily for sale. The fact that a sales force was not maintained is of no significance, since the record shows the existence of a seller's market and solicitation was unnecessary. We hold that during the taxable years involved the Ardmore Homes were held primarily for sale to customers in the ordinary course of the business of the partnership, and the profits realized from the sales of such properties are taxable as ordinary income. We next consider whether the gain derived from the sales *246 of the unimproved real properties, known as the Burmont Road and Winder tracts, is taxable as ordinary income or as income derived from the sales of capital assets held for more than six months. The petitioners contend that the partnership was not in the business of selling unimproved real property; that the transactions were entered into for investment purposes; that the property was never advertised or listed with a broker for sale; and that the partnership did not intend to either subdivide or improve such properties. The record shows with respect to the Burmont tract that the petitioners, on July 26, 1939, and one Ben Carroll contributed equally to purchase the property. When the petitioners formed their partnership in 1940 their one-half interest was transferred to the partnership. In 1941 the partnership acquired by purchase from Carroll his one-half interest. The property was held until 1947 when it was sold at a profit. On the sale the partnership paid a commission. Regardless of the purpose for which the petitioners and Carroll originally acquired the property, when the entire title was acquired by the partnership in 1941 the fair inference is that it was held for sale *247 in the furtherance of the partnership business. The testimony of the petitioner, Fred P. Meagher, the only witness sworn, that the partnership was willing at all times to sell the property, if a satisfactory offer was received, supports the view that the Burmont Road tract was primarily held for sale to customers in the ordinary course of the trade or business of the partnership, thus removing it from its treatment as a capital asset under the provisions of section 117 (j) of the Code. Furthermore, the petitioners, in their respective returns for the taxable year 1947, treated the gain derived from such sale as ordinary income. No additional facts not possessed by them at the time the returns were filed have been presented, indicating that their treatment of the gain as ordinary income was erroneous. We hold that the gain derived from the sale of the Burmont Road tract is taxable as ordinary income. The facts pertaining to the Winder tract disclose that the petitioner, Fred P. Meagher, and one Samuel N. Rhodes entered into a joint venture on August 16, 1939, to purchase a tract of unimproved real property as equal partners. On November 9, 1939, Rhodes sold a portion of the property. *248 In 1940, Fred P. Meagher contributed his one-half interest in the remainder of the property to the partnership formed by the petitioners. In 1946, Rhodes sold the remaining portion of the property. As a result of this sale the partnership of the petitioners realized a profit of $5,139.31. On their respective returns for the taxable year 1946 each petitioner reported one-half of such sum as ordinary income. The petitioners now contend that the income realized should be taxed as capital gain under the provisions of section 117 (j) of the Code. The testimony relative to this transaction is very meager and indefinite. The witness Meagher testified that the entire transaction was handled by Rhodes, who was not called as a witness. The terms of the joint venture arrangement were not disclosed. The record is devoid of facts other than that the property was purchased and sold in two parcels. We think it is equally rational to infer that the property was acquired primarily for sale to customers in the ordinary business of the joint venture as to infer that the primary purpose was to make an investment. The burden was upon the petitioners to prove facts sufficient to warrant the conclusion that *249 the transaction was entered into solely for investment purposes. We are convinced that such burden has not been met. For failure of adequate proof, we hold that gain accruing to the partnership from the sale in 1946 of the remainder of the Winder tract is taxable as ordinary income. By reason of certain concessions made by petitioners at the hearing of these proceedings, Decisions will be entered under Rule 50.